IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | | |
|---|---|---|
| IN RE: § | Civil Action No. B:10-cv-00020 | |
| BORDER ANESTHESIA PC, § | | |
|    Debtor. § | | |
| _____ § | _____ | |
| § | | |
| MICHAEL B. SCHMIDT, TRUSTEE § | | |
| OF THE ESTATE OF BORDER § | | |
| ANESTHESIA SERVICES, P.C. and § | | |
| REGINALD BERRY, § | | |
|    Plaintiffs, § | | |
| § | | |
| VS. § | Consolidated Adversary No. 07-02098 | |
| § | | |
| DOUGLAS MCKEE, INDIVIDUALLY § | | |
| and d/b/a DOUGLAS C. MCKEE, CRNA, § | | |
| P.C., VIJI ROBERTS, INDIVIDUALLY § | | |
| and d/b/a VIJI ROBERTS ANESTHESIA § | | |
| CRNA, P.C., MARY WEATHERS, § | | |
| MARTIN POWERS, INDIVIDUALLY § | | |
| and d/b/a POWERS ANESTHESIA § | | |
| SERVICES, P.C., WILLIAM T. GRADY, § | | |
| JR., WILLIAM WRENCH, and EVELYN § | | |
| WILLIAMS, COLUMBIA VALLEY § | | |
| HEALTHCARE SYSTEM, LP d/b/a § | | |
| VALLEY REGIONAL MEDICAL § | | |
| CENTER and RIO GRANDE § | | |
| ANESTHESIOLOGISTS, P.A., § | | |
|    Defendants. § | | |

**PLAINTIFFS' FIRST AMENDED COMPLAINT**

TO THE HONORABLE HILDA G. TAGLE, UNITED STATES DISTRICT JUDGE:

      COME NOW, Plaintiffs Michael B. Schmidt, (the "Trustee") Trustee of the Estate of Border Anesthesia Services, P.C., and Reginald Berry ("Berry") and files this their *First Amended Complaint* complaining of Douglas McKee, individually and d/b/a Douglas C. McKee, CRNA, P.C., Viji Roberts, Individually and d/b/a Viji Roberts Anesthesia CRNA, P.C., Mary Weathers, Martin Powers, Individually and d/b/a Powers Anesthesia Services, P.C., William T.

Grady, Jr., William Wrench, Evelyn Williams, Columbia Valley Healthcare System, L.P. d/b/a Valley Regional Medical Center and Rio Grande Anesthesiologists, P.A. (the "Defendants") and in support thereof would respectfully represent to the Court as follows:

## I.   PARTIES

1. Border Anesthesia Services, P.C. ("BAS") filed a petition for relief under chapter 7 of the United States Bankruptcy Code on September 1, 2005 in the Southern District of Texas. Michael B. Schmidt is the duly appointed and acting Trustee of the bankruptcy estate.

2. Plaintiff Berry is an individual residing in Cameron County in the State of Texas. He is the President and Director of BAS.

3. Defendant Douglas McKee, Individually and d/b/a Douglas McKee, CRNA, P.C., ("McKee") is an individual and sole shareholder of a professional corporation duly formed and existing under the laws of the State of Texas, with its principal place of business in Cameron County, Texas. This Defendant has been served with process but has failed to respond to this litigation. Therefore, this Defendant can be served with a copy of this pleading via certified mail return receipt requested at his last known address of 133 Country Club Road, Brownsville, Texas 78520 pursuant to Federal Rule of Civil Procedure 4(e) and Texas Rule of Civil Procedure 21a.

4. Defendant Viji Roberts Anesthesia, CRNA, P.C., ("Roberts") is an individual and sole shareholder of a professional corporation duly formed and existing under the laws of the State of Texas, with its principal place of business in Cameron County, Texas. This Defendant has been served with process and made a party to this litigation. Therefore, this Defendant can be served with a copy of this pleading through his attorney of record, Ed Stapleton, pursuant to Federal Rule of Civil Procedure 4(e) and Texas Rule of Civil Procedure 21a.

2

5. Defendant Mary Weathers ("Weathers") is a resident of the State of Texas. This Defendant has been served with process and made a party to this litigation. Therefore, this Defendant can be served with a copy of this pleading through her attorney of record, Ed Stapleton, pursuant to Federal Rule of Civil Procedure 4(e) and Texas Rule of Civil Procedure 21a.

6. Defendant Martin Powers and Powers Anesthesia Services, P.C., ("Powers") is an individual and sole shareholder of a professional corporation duly formed and existing under the laws of the State of Texas, with its principal place of business in Cameron County, Texas. This Defendant has been served with process and made a party to this litigation. Therefore, this Defendant can be served with a copy of this pleading through its attorney of record, Ed Stapleton, pursuant to Federal Rule of Civil Procedure 4(e) and Texas Rule of Civil Procedure 21a.

7. Defendant William T. Grady, Jr. ("Grady") is an individual residing in the State of Texas. This Defendant has been served with process and made a party to this litigation. This Defendant has been served with process but has failed to respond to this litigation. Therefore, this Defendant can be served with a copy of this pleading via certified mail return receipt requested at his last known address of 1601 Santa Ana Avenue, Rancho Viejo, Texas 78575 pursuant to Federal Rule of Civil Procedure 4(e) and Texas Rule of Civil Procedure 21a.

8. Defendant William Wrench ("Wrench") is an individual residing in the State of Texas. This Defendant has been served with process but has failed to respond to this litigation. Therefore, this Defendant can be served with a copy of this pleading via certified mail return receipt requested at his last known address of 1209 Santa Ana Avenue, Rancho Viejo, Texas 78575 pursuant to Federal Rule of Civil Procedure 4(e) and Texas Rule of Civil Procedure 21a.

9. Evelyn Williams ("Williams") is an individual residing in the State of Texas. This Defendant has been served with process but has failed to respond to this litigation. Therefore, this Defendant can be served with a copy of this pleading via certified mail return receipt requested at her last known address of 7368 Ablelardo Drive, Olmito, Texas 78578 pursuant to Federal Rule of Civil Procedure 4(e) and Texas Rule of Civil Procedure 21a.

10. Defendant Columbia Valley Healthcare System, LP d/b/a Valley Regional Medical Center ("VRMC") is a limited partnership duly formed and existing under the laws of the State of Delaware. This Defendant has been served with process and made a party to this litigation. Therefore, this Defendant can be served with a copy of this pleading through its attorney of record, Jack Clemens (Toby) Skaggs, pursuant to Texas Rule of Civil Procedure 21(a).

11. Defendant Rio Grande Anesthesiologists, P.A. ("Rio Grande") is a corporation duly formed and existing under the laws of the State of Texas. This Defendant has been served with process and made a party to this litigation. Therefore, this Defendant can be served with a copy of this pleading through its attorney of record, Horacio Barrera, pursuant to Texas Rule of Civil Procedure 21(a).

## II.   JURISDICTION AND VENUE

12. This Court has jurisdiction pursuant to 28 U.S.C. Sections 157(a) and (d) and 1334. Venue is proper in the Southern District of Texas pursuant to 28 U.S.C. Section 1409(a).

## III.   BACKGROUND

13. Plaintiffs bring this suit to recover damages sustained as a result of a breach of contract, tortious interference with existing contractual relations, civil conspiracy, malicious prosecution, defamation and antitrust violations committed by Defendants.

14. On or about July 31, 1996, McKee entered into a Professional Services Sub-

Contract Agreement with BAS. By virtue of said Professional Services Sub-Contract Agreement, BAS retained McKee to provide anesthesia services for procedures performed at various facilities including the Obstetrics and Gynecology Department of Brownsville Medical Center and VRMC.

15. The other CRNAs all entered into similar Professional Services Sub-Contract Agreements with BAS. For example, Wrench entered into his Agreement with BAS on or about July 31, 1996. Grady entered into his Agreement with BAS on or about November 16, 1997. Powers entered into his Agreement with BAS on or about May 11, 1999. Roberts entered into her Agreement with BAS on or about March 22, 2002. Weathers entered into her Agreement with BAS on or about April 1, 2003. Williams entered into her Agreement with BAS on or about June 16, 2003.

16. Plaintiffs would show that BAS had an existing contract with VRMC to provide professional services in the form of obstetrical anesthesia services. This said agreement entitled "Professional Services Agreement" was entered into by BAS and VRMC on or about September 2, 2003, and said contract was to terminate on September 30, 2006. By December of 2003, all but two of the CRNAs, Weathers and Williams, had received their privileges to work at the VRMC facility through BAS.

17. In pertinent part, the Professional Services Agreement stated that any discontinuation of service by any of the CRNAs without VRMC's consent would be deemed a material breach of BAS's obligations, and would entitle VRMC to terminate the Professional Services Agreement.

18. On December 12, 2003, the CRNAs breached their contracts with BAS by resigning without notice, and in turn, VRMC terminated its agreement with BAS. Thereafter, the CRNAs formed their own company, Independent Anesthesia Group, PLLC (hereafter "IAG"). Despite the otherwise lengthy credentialing process that had to be undertaken by the CRNAs to

continue to provide services at the VRMC facility, VRMC gave the CRNAs privileges within minutes of the breach of their contract with BAS. Further, VRMC extended privileges to Weathers and Williams when it had previously failed to do so.

19.     Defendant Rio Grande also provided anesthesia services at the VRMC facility and was a direct competitor of BAS. In 2003, Rio Grande was owned and directed by Howard H. Roberts, M.D. and Raymundo Gustavo Matar, M.D., both of whom were anesthesiologists on the medical staff at VRMC.

20.     In 2002, Howard H. Roberts, M.D. advised VRMC's Board of Directors that he could not compete with BAS and asked the Board to amend VRMC's by-laws to require that all CRNAs at the VRMC facility be supervised by an anesthesiologist. Subsequently, the Rules and Regulations of the hospital by-laws were amended to require that an anesthesiologist supervise all CRNAs at the VRMC facility. The laws and regulations of every state, including Texas, allow CRNAs to work directly with a physician or other authorized health care professional and do not require that their services be supervised by an anesthesiologist. Furthermore, anesthesiologist supervision is currently not required by either the Joint Commission on Accreditation of Healthcare Organizations or Medicare. The amendment to the Rules and Regulations of the by-laws at VRMC was not for the purpose of compliance with any state or federal laws or regulations.

21.     Despite this change to the Rule and Regulations, BAS successfully obtained the above-mentioned contract in accordance with the existing hospital by-laws and entered into an agreement with Dr. Munoz, a non-anesthesiologist physician to act as its Medical Director. However, in 2003, VRMC subsequently breached its contract with BAS by assigning Dr.

Raymundo G. Matar as BAS's medical director, without the prior knowledge or consent of BAS or Dr. Munoz.

22. Subsequent to the CRNAs' breach of contract with BAS, the CRNAs signed a contract with VRMC in February of 2004 with a retroactive effective date of December 12, 2003. The CRNAs later entered into a professional service agreement with Rio Grande to provide anesthesia services at VRMC in August of 2004, giving Rio Grande a monopoly on anesthesia service at VRMC.

23. The above facts show a well orchestrated and executed plan to divest BAS of its contractual rights, and to both remove BAS as a competitor for anesthesia services and to unreasonably restrict competition for anesthesia services at the VRMC facility. Additionally, the CRNAs went even further in their plan against BAS by filing criminal charges on numerous occasions causing the arrest of Sylvia Berry and Reginald Berry. The CRNAs maliciously prosecuted Sylvia Berry, Reginald Berry and BAS for alleged thefts. The CRNA's false allegations further lead to wrongful indictments against Sylvia Berry, Reginald Berry and BAS.

## IV.  CAUSES OF ACTION

**A.  CRNAS' BREACHES OF PROFESSIONAL SERVICES SUB·CONTRACT AGREEMENTS**

24. Pursuant to the said Professional Services Sub-Contract Agreements, the CRNAs had certain obligations that are outlined therein. Furthermore, the said Professional Services Sub-Contract Agreements contain certain terms as to the termination of same which are outlined therein. For example, after the expiration of the initial term (which is defined as one calendar year commencing when the Agreement was signed), either party may, in its sole discretion, terminate the Agreement without cause by giving the other party at least ninety (90) days prior written notice.

25.     Also, all of the said Professional Services Sub-Contract Agreements contain a provision that provides that either party may terminate the Agreement upon breach by the other party of any material provision of the Agreement, provided such breach continues for fifteen (15) days after receipt by the breaching party of written notice of such breach from the non-breaching party.  Provided that, if the breaching party commences to cure the breach within the fifteen (15) day notice and diligently pursues such cure, such party shall have thirty (30) days after receipt of notice in which to complete such cure.

26.     Plaintiffs would also show this Honorable Court that the said Professional Services Sub-Contract Agreements contain a confidentiality clause which states that except for disclosure to the CRNA (i.e. certified registered nurse anesthetist's legal counsel, accountant or financial advisors, none of whom shall be associated or affiliated in any way with Brownsville Medical Center or Plaintiff or any of Plaintiffs' affiliates), the certified registered nurse anesthetist shall not disclose the terms of the Agreement to any person who is not a party or signatory to the Agreement, unless disclosure thereof is required by law or otherwise authorized by the Agreement or consented to by BAS and Brownsville Medical Center.  Any such unauthorized disclosure of the terms of the Agreement shall be a material breach of the Agreement and shall provide Plaintiffs with the option of pursuing remedies for breach or immediate termination of the Agreement.

27.     Plaintiffs would also show this Honorable Court that all of the CRNAs have breached the aforementioned Professional Services Sub-Contract Agreement in at least three (3) different ways. First, the CRNAs breached said Agreement by signing the Termination of All Contractual Agreements letter dated December 12, 2003 and walking out of his job at VRMC. In this respect, Weathers and Williams breached the ninety (90) day written notice provision of

said Agreement. Second, by signing the Termination of All Contractual Agreements letter dated December 12, 2003 and walking out of their job at VRMC, McKee, Roberts, Powers, Grady and Wrench breached the thirty (30) day written notice provision of said Agreement. Third, all of the CRNAs breached said Agreement by breaching its confidentiality provision and by disclosing the terms' and provisions of his Agreement with the other CRNAs and by filing their state court lawsuit against Plaintiffs.

28. As a direct and proximate result of all of the CRNAs' actions or inactions and/or breach of contract, Plaintiffs have suffered damages, including, but not limited to the incurred expenses, expectation interest, reliance interest, restitution interest, loss of income, loss of profits, cost of delay in performance, cost of mitigation, cost of substitute performance, loss of credit reputation, and other damages for which Plaintiffs hereby sue in an amount within the jurisdictional limits of this Honorable Court.

29. As a further and direct result of all of the CRNAs' termination of their respective Professional Services Sub-Contract Agreements, Plaintiffs contend that all of the Defendants have no further rights including, but not limited to compensation as of the date of termination (i.e., December 12, 2003), a full and proper accounting, access to the books and records relating to the billing and collections, any type of quantum meruit, or an award of attorney's fees.

**B.  VRMC'S BREACH OF PROFESSIONAL SERVICES AGREEMENT**

30. Plaintiffs would show that the "Professional Service Agreement" was entered into by BAS and VRMC on September 2, 2003. The agreement specifically stated that it was to terminate on September 30, 2006.

31. BAS's duty to perform all conditions precedent to VRMC's liability was waived and excused by VRMC's interference with BAS's sub-contract agreements with the CRNAs. In particular, VRMC engaged in conduct and/or acts and/or agreements that induced the CRNAs to

9

discontinue their service to BAS, thereby causing the CRNAs to breach their Sub-contract Agreements with BAS.

32.  Due to VRMC's tortious interference with BAS's Sub-contract Agreements with the CRNAs, BAS was unable to perform his or her obligations under the Professional Service Agreement.

33.  In the alternative, VRMC consented to the discontinuation of services by the CRNAs.

34.  Plaintiffs would show this Honorable Court that VRMC breached the aforementioned Professional Services Agreement by engaging in conduct that induced the CRNAs to breach their Sub-contract Agreements, and by terminating the Professional Service Agreement prior to its termination date without proper grounds under the Professional Services Agreement.

35.  In the alternative, VRMC's consent to the discontinuation of service by the CRNAs negated VRMC's right to terminate the Professional Service Agreement prior to its termination date.

36.  As a direct and proximate result of VRMC's actions or inactions and/or breach of contract, Plaintiffs have suffered damages, including, but not limited to the incurred expenses, expectation interest, reliance interest, restitution interest, loss of income, loss of profits, cost of delay in performance, cost of mitigation, cost of substitute performance, loss of credit reputation, and other damages for which Plaintiffs hereby sue in an amount within the jurisdictional limits of this Honorable Court.

**C.   CRNAS' TORTIOUS INTERFERENCE WITH EXISTING CONTRACTUAL RELATIONS**

37.  Plaintiffs would show this Honorable Court that BAS had an existing valid contract with VRMC to provide professional services in the form of obstetrical anesthesia services.  This

said agreement entitled as "Professional Services Agreement" was entered into by the BAS on or about September 2, 2003. The CRNAs knew or had reason to know of Plaintiff's contract with VRMC and Plaintiff's interest in the contract as the CRNAs were providers under the contract and interfered with Plaintiff's contract with VRMC. The behavior on the part of all of the Defendants were undertaken willfully and intentionally. Additionally, the aforementioned actions, conduct, and/or behavior were the proximate cause of injury to Plaintiffs for which Plaintiffs hereby sue in an amount within the jurisdictional limits of this Honorable Court. Plaintiffs have suffered damages, including, but not limited to the incurred expenses, loss of income, loss of profits, cost of delay in performance, cost of mitigation, cost of substitute performance, loss of credit reputation, restitution, lost benefit of the bargain, loss of goodwill and other damages for which Plaintiffs hereby sue in an amount within the jurisdictional limits of this Honorable Court.

**D.     VRMC and RIO GRANDE'S TORTIOUS INTERFERENCE WITH EXISTING CONTRACT**

38.     Plaintiffs had a valid contract with VRMC. Plaintiffs will show that VRMC and Rio Grande had knowledge of the Sub-contract Agreements existing between BAS and the CRNAs and Plaintiff's interest in the agreement.

39.     VRMC and Rio Grande willfully and intentionally interfered and induced the CRNAs to breach and violate the provisions of the sub-contract agreements with BAS. Rio Grande offered to enter into professional service agreements with the CRNAs if they breached their sub-contract agreement. Plaintiffs have suffered damages, including, but not limited to the incurred expenses, loss of income, loss of profits, cost of delay in performance, cost of mitigation, cost of substitute performance, loss of credit reputation, restitution, loss of benefits of the contract, lost wagess, injury to reputation, lost profits, loss of goodwill and other damages for which Plaintiffs hereby sue in an amount within the jurisdictional limits of this Honorable Court.

E.  **CIVIL CONSPIRACY**

40. Plaintiffs would show this Honorable Court that prior to December 12, 2003 all of the Defendants engaged in acts, behavior, and/or conduct designed to cause damages to Plaintiffs. Specifically, all of the Defendants in combination with one another had the objective of wrongfully interfering with the Agreement between Plaintiffs and VRMC and set themselves in a course of action to accomplish such goal by engaging in one or more unlawful and overt acts. The Defendants knew that the agreed acts would result in harm to Plaintiffs.

41. There was a meeting of the minds among all of the Defendants on the said object or course of action to force BAS out of its contract with VRMC and the CRNAs. As a proximate result of Defendants' acts, behavior, and/or conduct, Plaintiffs sustained damages including lost profits, damage to business's credit reputation, loss of goodwill and/or injuries for which they hereby sue in an amount within the jurisdictional limits of this Honorable Court.

42. Plaintiffs would show this Honorable Court that prior to December 12, 2003 VRMC, Rio Grande and the CRNAs engaged in acts, behavior, and/or conduct designed to cause damages to BAS. Specifically, VRMC, Rio Grande and the CRNAs had the objective of wrongfully interfering with the agreements that BAS had with the CRNAs and VRMC in mind to be accomplished and set themselves in a course of action to accomplish such goal by engaging in one or more unlawful and overt acts entitling Plaintiffs to exemplary damages.

43. There was a meeting of the minds between VRMC, Rio Grande and the CRNAs on the said object or course of action, and as a proximate result of the acts, behavior and/or conduct of VRMC and Rio Grande, BAS sustained damages and/or injuries.

F.  **MALICIOUS PROSECUTION**

44. Defendants maliciously, and without probable cause, initiated a criminal complaint against Plaintiffs in Cameron County, Texas by filing a criminal complaint with the

12


Brownsville Police Department.

45. The complaint charged BAS and Berry with theft and alleged that Plaintiffs stole money from the CRNAs in an amount in excess of one million dollars. As a result, Berry was arrested for theft First Degree on March 20, 2006. Plaintiff was innocent of the charges against him.

46. Subsequently, upon review of the evidence presented by the CRNAs to the Brownsville Police Department and then subsequently presented to the District Attorneys Office said charges were dismissed by the District Attorneys Office of Cameron County, Texas on December 19, 2006 based on insufficient proof that a theft had occurred.

47. Despite the complete lack of evidence and probable cause against him and BAS and the previous dismissal, Berry was arrested for theft and misappropriation of fiduciary property again on November 3, 2008. Both Berry and BAS were charged. These charges were also later dismissed on May 4, 2009.

48. In addition to the criminal prosecution, the CRNAs also maliciously and without probable cause initiated an investigation with the Internal Revenue Service against BAS. The CRNAs alleged that they were employees of BAS rather than independent contractors. The IRS conducted an investigation into the matter and charged BAS over $250,000.00 in back taxes and and penalties. However, in May of 2006, the IRS changed its position and determined that the CRNAs were, in fact, independent contractors and that BAS was eligible for tax relief.

49. In October of 2005, the Texas Board of Nurse Examiners began its investigation into allegations of theft and fraud based documents forwarded to the Board by the CRNAs. The allegations had the potential to result in revocation of Berry's license if they were found to be true. The CRNAs instituted the proceeding maliciously and without probable cause. After

almost four years of investigation, the Board closed the investigation without taking any action against Berry in September of 2009.

50. The CRNA's wrongful conduct caused the Plaintiffs actual damages in the costs of defending the criminal prosecution and the investigations conducted by the Internal Revenue Service and the Texas Board of Nurse Examiners. This conduct also caused harm to the Plaintiffs' reputation resulting from the accusations, including loss of past and future earning capacity, emotional distress resulting from the proceedings, including mental anguish in the past and in the future, and harm caused by the arrest. Plaintiffs seek unliquidated damages within the jurisdictional limits of this Court.

### G. DEFAMATION

51. The CRNAs have slandered Plaintiffs by publishing statements that BAS and Berry stole money from the CRNAs in an amount over one million dollars. The statements by themselves constitute **slander per** se as they directly or by innuendo accuse BAS and Berry of criminal acts. The statements, made by the CRNAs are statutory slander because they tend to injure Plaintiffs' reputation and expose Plaintiffs to public hatred, contempt, ridicule, and financial injury and impeach the honesty and integrity of Plaintiffs.

52. The CRNAs' publication of the defamatory statements is not privileged. They have each published the defamatory statements with malice and have or should have had substantial grounds for knowing that they are false and published the statements with reckless disregard to the truth of such statements. Plaintiffs request actual damages including injury to character or reputation, injury to feelings, mental anguish in the past and future, actual damages, loss of earning capacity in the past and future, loss of past and future income, and loss of employment in the past and future in an amount in excess of the jurisdictional limits of the court and punitive damages as determined by the jury.

**H.     VIOLATION OF SECTION 1 OF THE SHERMAN ACT**

53.     VRMC and Rio Grande have entered into the above-mentioned agreements and conspiracy, the purpose of which is intended to harm or restrain competition.

54.     The Defendants' agreement significantly restrains trade in that it unlawfully provides that an anesthesiologist must supervise a CRNA providing services at VRMC. The anesthesiologists at VRMC are owners of Rio Grande. Thus, any CRNA wanting to do business with VRMC must first contract with Rio Grande.

55.     The Defendants' agreement constitutes an unreasonable restraint of trade because it suppresses and, in fact, destroys competition and has the effect of increasing prices for anesthesia services to patients of VRMC. The Defendants' agreement has had the following anticompetitive effects, among others:

    a.     Competition for anesthesia services at VRMC has been virtually eliminated.

    b.     Patients at VRMC have been deprived of the benefits of competition in the supply and sale of anesthesia services.

    c.     The costs for anesthesia services at VRMC have risen dramatically.

56.     As a direct and proximate result of the VRMC and RIO GRANDE's agreement in restraint of trade, BAS has sustained actual harm in its business or property and suffered an antitrust injury. Specifically, prior to the time that VRMC and RIO GRANDE entered into the unlawful agreement described above, BAS routinely competed for VRMC's business. Since the inception of the unlawful agreement, neither BAS, nor any other CRNA, has been able to compete for, much less obtain, contracts for anesthesia services at VRMC.

**I.     CONVERSION**

57.     Plaintiffs had a right to immediate possession of the payments for anesthesia

services conducted by CRNA.'s. The CRNA's wrongfully acquired and exercised dominion and control over Plaintiffs' payments for anesthesia services. Plaintiffs have suffered damages, including, but not limited to loss of value and use of property, lost profits and other damages for which Plaintiffs hereby sue in an amount within the jurisdictional limits of this Honorable Court.

### J.  EXEMPLARY DAMAGES SOUGHT BY PLAINTIFFS

58.  Plaintiffs will further show this Honorable Court and Jury that all of the foregoing actions, behavior, and/or conduct on the part of all of the Defendants constituted malice in that such actions, behavior, and/or conduct amounted to ill will, bad or evil motive, and/or gross negligence to the rights of Plaintiffs as to amount, a willful, wanton and malicious acts. As such, Plaintiffs seek exemplary and/or punitive damages against the Defendants, jointly and severally, for such conduct in an amount to be determined by the trier of fact.

### K.  ATTORNEY'S FEES SOUGHT BY PLAINTIFFS

59.  Plaintiffs have retained The Armstrong Firm, the undersigned law firm, to represent them in this proceeding and have agreed to pay the undersigned law firm reasonable and necessary attorney's fees. The amount of attorney's fees being expended by Plaintiffs continues and has not yet been calculated to a finality by virtue of the fact that this legal proceeding continues and a trial on the final merits has not been had.  As such, Plaintiffs seek to recover reasonable and necessary attorney's fees from Defendants, jointly and severally, in relation to work performed by the undersigned law firm in this proceeding. The recovery of reasonable attorney's fees is sought pursuant to Section 38.001 of the Texas Civil Practice and Remedies Code.

### PRAYER

WHEREFORE, PREMISES CONSIDERED, Plaintiffs Michael B. Schmidt, Trustee of the Estate of Border Anesthesia Services, P.C., and Reginald Berry request that upon final trial Plaintiffs have against Defendants, Douglas McKee, Individually and d/b/a Douglas C. McKee,

16

CRNA, P.C., Viji Roberts, Individually and d/b/a Viji Roberts Anesthesia CRNA, P.C., Mary Weathers, Martin Powers, Individually and d/b/a Powers Anesthesia Services, P.C., William T. Grady, Jr., William Wrench, Evelyn Williams, Columbia Valley Healthcare System, L.P. d/b/a Valley Regional Medical Center and Rio Grande Anesthesiologists, P.A.:

a.  Judgment against the Defendants for damages in an amount within the jurisdictional limits of this court;

b.  Judgment against the Defendants for exemplary damages in an amount within the jurisdictional limits of this court;

c.  Pre-judgment and post-judgment interest on said judgment at the maximum rate allowed under the law;

d.  All costs expended herein;

e.  Attorneys' fees; and

f.  Such other and further relief, general or special, at law or in equity, to which Plaintiffs may show themselves justly entitled.

RESPECTFULLY SUBMITTED,

**THE ARMSTRONG FIRM**
2600 Old Alice Road, Suite A
Brownsville, Texas 78521
Telephone: (956) 546-5556
Facsimile: (956) 546-0470
*/s/ R.W. Armstrong*
R. W. Armstrong, State Bar # 01323500
Federal ID No. 2237
rwa@armstrong-firm.com
R. W. Armstrong, II, State Bar # 24059384
Federal ID No. 884809
rwaii@armstrong-firm.com
Amanda Armstrong, State Bar # 24039774
Federal ID No. 875121
amanda@armstrong-firm.com

17

<div style="text-align: right">ATTORNEY-IN-CHARGE FOR<br>PLAINTIFFS</div>

**CERTIFICATE OF SERVICE**

      I, R.W. Armstrong, certify that a copy of the *Plaintiffs' First Amended Complaint* was served on all parties on October 27th, 2010 as follows:

*Counsel for Intervenor Sylvia Berry*
Phillip Cowen, Attorney at Law
500 E. Levee Street
Brownsville, Texas 78520

*Counsel for Defendant Columbia Valley Healthcare System, LP*
Jack Clemens (Toby) Skaggs
1325 Palm Blvd., Ste. A
Brownsville, Texas 78520

*Counsel for Defendant Rio Grande Anesthesiologists, P.A*
Horacio Barrera
1201 E. Van Buren
Brownsville, Texas 78520

*Counsel for Consolidated Defendants/Cross Plaintiffs Viji Roberts, Martin Powers and Mary Weathers*
Ed Stapleton
2401 Wildflower Drive, Ste. C
Brownsville, Texas 78526

Douglas C. McKee,
Individually and d/b/a Douglas C. McKee, CRNA, P.C.
133 Country Club Rd.
Brownsville, Texas 78520

William T. Grady, Jr.
1601 Santa Ana Avenue
Rancho Viejo, Texas 78575

William Wrench
1209 Santa Ana
Rancho Viejo, Texas 78575

18

Evelyn Williams
7368 Abelardo Drive
Olmito, Texas 78578

/s/ R.W. Armstrong